UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA NARDELLA, as parent and guardian of C.D., | ) ) ) |
| Plaintiff, | ) Case No. 15-cv-4885 ) ) Judge Sharon Johnson Coleman |
| v. | ) ) |
| LEYDEN HIGH SCHOOL DISTRICT 212, NICK POLYAK, BOARD OF EDUCATION OF LEYDEN TOWNSHIP, MELINDA R. MCGUFFIN, KATE TALSMA, KATIE LACOUNT, KATHY KLAUS, and ADVENTIST GLENOAKS HOSPITAL THERAPEUTIC DAY SCHOOL | ) ) ) ) ) |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Cynthia Nardella, acting as the parent and guardian of C.D., filed a first amended complaint in this action against Leyden High School District 212, Nick Polyak, the Superintendent of Leyden High School District 212, the Board of Education of Leyden Township, Melinda R. McGuffin, Kate Talsma, Katie LaCount, Kathy Klaus (collectively "the Leyden defendants"), and the Adventist Glenoaks Hospital Therapeutic Day School. The Leyden defendants now move this Court to dismiss Count I as to defendants Nick Polyak, Melinda R. McGuffin, Kate Talsma, Katie Lacount, and Kathy Klaus and to dismiss Counts III, IV, and V with respect to the Leyden defendants. For the reasons set forth below, this motion [87] is granted in part and denied in part.

**Background**

The following allegations, except where otherwise noted, are taken from the Amended Complaint and are accepted as true. C.D. is, to quote the hearing examiner, a "well-liked and intelligent young man with high-functioning autism" (a/k/a Asperger's Syndrome) who "has deficiencies in the areas of social interaction, social understanding, and obsessive and compulsive

1

thoughts and behaviors." (Dkt. 98-4, 2, 4) C.D. attended high school in the Leyden High School District No. 212 from 2007 until 2011, where he was taught by Talsma and LaCount. (Dkt. 73 ¶ 11–12). C.D. subsequently participated in the district's post-secondary transition program at the Life 2 Transition Center, which Klaus was the director of. (*Id.* ¶¶ 13, 44). C.D.'s education was overseen by McGuffin, who was the Director of Special Education at Leydon High School District for at least some of the time period now at issue. (*Id.* ¶ 10).

The staff at both the high school and the Life 2 Transition Center were not trained to work with students with autism such as C.D. and therefore misinterpreted or misattributed the conduct associated with it. (*Id.* ¶¶ 31, 32, 34, 45). C.D.'s teachers routinely engaged in conduct that embarrassed and upset him (such as publically reprimanding him for turning in late assignments, mocking how long he took in the bathroom, and failing to inform him of dress requirements for vocational activities). (*Id.* ¶¶ 37–39, 48). Additionally, Klaus purportedly threw a towel in C.D.'s face and yelled at him after he spilled water while doing dishes and, in a separate incident, imitated him in front of the class. (*Id.* ¶¶ 49–50). During his enrollment at the Life 2 Transition Center, C.D. did not receive individualized therapy or necessary behavioral interventions. (*Id.* ¶¶ 52–53).

In December 2012, C.D. threatened to bring a gun to school. (*Id.* ¶ 57) After that incident, it was falsely reported that C.D. had further stated that he would bring a gun "like at Sandy Hook." (*Id.* ¶ 64). On January 8, 2013, C.D. was suspended after an incident at the Life Transition Center involving a knife. (*Id.* ¶ 58). A Manifestation Determination Review process was commenced by the district, which concluded that the incident was not a result of C.D.'s disability. (*Id.* ¶ 75). Following that incident, and based upon C.D.'s perceived needs, C.D. was placed in a therapeutic program at the Glen Oaks Transition Center, starting February 6, 2013. (*Id.* ¶ 81). C.D. was subsequently removed from Glen Oaks on March 14, 2013, following multiple suspensions and behavioral incidents which Nardella attributes to Glen Oaks' incompatibility with C.D.'s needs. (*Id.* ¶¶ 83–85,

2

94). Leyden subsequently placed C.D. at Have Dreams, where C.D. remained enrolled until Leyden stopped providing C.D. with services prior to his twenty-second birthday. (*Id.* ¶¶ 99–100, 105)

In November 2013, Nardella asked the school district to follow through on a prior promise to provide a psychiatric assessment of C.D.. (*Id.* ¶ 101). The district agreed, but also requested a simultaneous evaluation of his educational needs as part of his triennial evaluation. (*Id.* ¶ 103) The school district also required that the examination be conducted by an approved service provider and that Nardella permit the provider to send the district a copy of the report. (*Id.*). Nardella disputed the school district's right to restrict who performed the evaluation or to require that it receive a copy of the report, and stated that she wanted "immediate due process". (*Id.* ¶¶ 103–104). On November 22, 2013, the school district filed a due process request to establish that the evaluation it had offered in January 2013 was appropriate. (*Id.* ¶ 105). On March 5, 2014, Nadella filed a hearing request alleging violations of the Individual's with Disabilities Education Act (IDEA), including failures to (1) identify all of C.D.'s disabilities, (2) conduct appropriate assessments, (3) draft measurable and appropriate goals across all areas of disability, (4) conduct a functional behavior analysis and behavior intervention plan in the face of increasing behavioral problems, (5) provide related services of necessary scope and intensity, (6) provide appropriate accommodations, instruction, modifications, supports, and services, and (7) to provide an appropriate transition plan and provide C.D. with an appropriate placement. (*Id.* ¶¶ 106–107). At the outset the Independent Hearing Officer (IHO) dismissed many or Nardella's claims, thereby limiting the issues to the inadequacy of services to address C.D.'s social and emotional needs and the compensatory services that were consequently warranted. (*Id.* ¶¶ 108–115). After a two day hearing on those remaining claims, the Independent Hearing Officer issued a Final Determination and Order (FDO). (Dkt. 98-4). The FDO concluded that the district had failed to address C.D.'s needs and ordered that the

district schedule an independent evaluation of C.D. and subsequently arrange for ten one-hour individual counseling sessions with a qualified mental health professional. (Dkt. 98-4).

Nardella then filed the present suit appealing the FDO, asserting federal claims under 42 U.S.C. § 1983, and raising a state law claim for intentional infliction of emotional distress. In addition to the school district, Nardella named Polyak, the Board of Education of Leyden Township, McGuffin, Talsma, LaCount, Klaus, and the Adventist Glenoaks Hospital Therapeutic Day School as defendants in this action.

**Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. The allegations must contain sufficient factual material to raise a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Although Rule 8 does not require a plaintiff to plead particularized facts, the complaint must allege factual "allegations that raise a right to relief above the speculative level." *Arnett v. Webster*, 658 F.3d 742, 751–52 (7th Cir. 2011). Put differently, Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), *see also* Fed. R. Civ. P. 8(a). When ruling on a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012).

**Discussion**

The Leyden defendants first contend that Count I, which appeals the Independent Hearing Officer's final determination and order, should be dismissed with respect to the individually named defendants.

The Individuals with Disabilities Education Improvement Act (IDEA) provides that a parent may file a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child," and establishes procedures under which a due process hearing on the complaint will be held. 20 U.S.C. § 1415(b). The results of such a hearing, once final, may be appealed by bringing a civil action with respect to the complaint presented in a district court of competent jurisdiction. 20 U.S.C. § 1415(i)(2)(A).

Because Count I functions as an appeal of the Hearing Officer's final order, it may only be brought with respect to parties who were participants in the due process hearing. *Kerry M. v. Manhattan Sch. Dist. #114*, No. 03 C 9349, 2004 WL 2538303, at *8 (N.D. Ill. Sept. 8, 2004) (Guzman, J.). Polyak, McGuffin, Talsma, LaCount, and Klaus were not parties to the administrative action, and therefore cannot now be named as individual-capacity defendants in Nardella's appeal of its outcome. Furthermore, Nardella's official capacity claim against Polyak is redundant of her claim against Leyden High School District 212 and is therefore unnecessary. *Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015). Accordingly, the individual defendants must be dismissed from Count I.

The Leyden defendants next contend that Counts III and IV should be dismissed because section 1983 actions are not available to remedy IDEA violations. Binding precedent within this circuit establishes that section 1983 can be an avenue for pursuing remedies under the IDEA. *Marie O. v. Edgar*, 131 F.3d 610, 621–22 (7th Cir. 1997). The defendants contend that that precedent is no longer valid in light of the Supreme Court's decision in *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 125 S.Ct. 1453, 161 L.Ed.2d 316 (2005). Indeed, in *Stanek*, 783 F.3d at 644, the Seventh Circuit expressly acknowledged that its prior holdings might need to be revisited in light of *Rancho Palos Verdes*. The Seventh Circuit, however, declined to address that issue at that time, electing instead to

reserve the issue until after the plaintiff's underlying statutory claims had survived summary judgment. *Id.* In light of the relatively succinct briefing presently before it, this Court will follow the example of the Seventh Circuit and withhold resolution of this question until summary judgment.

Finally, the Leyden defendants contend that the plaintiff has failed to establish a claim for intentional infliction of emotional distress. In order to state a claim for intentional infliction of emotional distress, a plaintiff must show that (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended that his conduct should inflict severe emotional distress or knew that there was a high probability that it would do so; and (3) the defendant's conduct in fact caused severe emotional distress. *Cook v. Winfrey*, 141 F.3d 322, 330 (7th Cir. 1998).

> Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities. Liability only attaches in circumstances where the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. The distress inflicted must be so severe that no reasonable person could be expected to endure it.

*Graham v. Commonwealth Edison Co.,* 742 N.E.2d 858, 866, 318 Ill.App.3d 736 (2000) (quotations omitted). Among the factors to be considered when evaluating whether conduct is extreme and outrageous are (1) the power and influence wielded by the harassing party; (2) the likelihood that the threatened action could be carried out; (3) the legitimate reasons that one might have for making the offensive statement; and (4) the defendant's awareness of the plaintiff's susceptibility to emotional stress. *Lujano v. Town of Cicero*, 691 F. Supp. 2d 873, 885 (N.D. Ill. 2010).

The plaintiff alleges that defendants Talsma, Klaus, and LaCount humiliated C.D. in an ongoing and punitive manner based on aspects of his disability. The plaintiff further alleges that McGuffin and Leyden were aware of this conduct, but took no action to prevent it, and that they inflicted further emotional distress on C.D. by placing him at Glen Oaks. And, finally, the plaintiff alleges that Leyden committed intentional infliction of emotional distress by falsely attributing to C.D. a statement that he would "use a gun like in Sandy Hook."

6

Here, it is undisputed that the defendants were aware of C.D.'s autism and his resulting susceptibility to emotional stress. And the disparate power dynamic between a student—especially a student with disabilities—and his teachers and administrators is readily apparent. With respect to Talsma, Klaus, and LaCount, the plaintiff's allegations identify specific instances in which district employees purportedly behaved unprofessionally and disrespectfully, turning a blind eye to C.D.'s personal and educational needs. These allegations, however, do not evince the level of extreme and outrageous conduct required to establish an actionable intentional infliction of emotional distress claim. *See Douglas v. Lofton,* No. 12 C 8592, 2013 WL 2156053, at *10 (N.D. Ill. May 17, 2013) (St. Eve, J.). Accordingly, Nardella's allegations against the district and McGuffin that they turned a blind eye to Talsma, Klaus, and LaCount's conduct therefore similarly fail to demonstrate extreme and outrageous conduct. And there is no basis in the allegations for this Court to conclude that C.D.'s placement at Glen Oaks constituted extreme and outrageous conduct beyond all bounds of human decency.

With respect to the allegation that the defendants misreported that C.D. had threatened to use a gun "like in Sandy Hook," this Court concedes that a false statement such as this could, conceivably, rise to the level of extreme and outrageous conduct. Here, however, Nardella has offered no specific allegations demonstrating that C.D. did in fact suffer severe emotional distress as a result of that false statement.

Finally, this Court notes that, even if an instance of extreme and outrageous conduct had been identified, Nardella has not alleged that any of the defendants intended to cause C.D. severe emotional distress or knew of a high probability that they might do so. *See Cook*, 141 F.3d at 330. Accordingly, Nardella has not stated a claim for intentional infliction of emotional distress.

**Conclusion**

For the foregoing reasons, the motion to dismiss [87] is granted in part and denied in part. Count I is dismissed with respect to defendants Polyack, McHuffin, Talsma, LaCount, and Klaus, and Count V is dismissed without prejudice with respect to the Leyden defendants.

SO ORDERED.

_____
Sharon Johnson Coleman
United States District Court Judge

DATED: June 22, 2016