# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CYNTHIA NARDELLA, as parent and guardian of C.D., | ) )  )  Case No. 15-cv-4885 |
| Plaintiff, | ) )  Judge Sharon Johnson Coleman |
| v. | ) ) |
| LEYDEN HIGH SCHOOL DISTRICT 212, NICK POLYAK, BOARD OF EDUCATION OF LEYDEN TOWNSHIP, MELINDA R. MCGUFFIN, KATE TALSMA, KATIE LACOUNT, KATHY KLAUS, ADVENTIST GLENOAKS HOSPITAL THERAPEUTIC DAY SCHOOL, ANNA HAMMOND, THOMAS KAUFMAN, and LISA GRIGSBY | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Cynthia Nardella, acting as the parent and guardian of C.D., filed a revised second amended complaint in this action against Leyden High School District 212, Nick Polyak, the Superintendent of Leyden High School District 212, the Board of Education of Leyden Township, Melinda R. McGuffin, Kate Talsma, Katie LaCount, Kathy Klaus (collectively "the Leyden defendants"), and the Adventist GlenOaks Hospital Therapeutic Day School (GlenOaks), Anna Hammond, Thomas Kaufman, and Lisa Grigsby (collectively the "GlenOaks defendants"). The GlenOaks defendants now move this Court to dismiss the plaintiff's revised second amended complaint for failure to state a claim. For the reasons set forth herein, that motion [176] is granted in part and denied in part.

**Background**

The underlying factual allegations of this case are set forth in this Court's prior opinion addressing the Leyden defendants' motion to dismiss the First Amended Complaint [Dkt. 116].

1

This Court incorporates that description of the facts herein, and adds only those material allegations that are pertinent to those claims addressed herein.

C.D.'s placement at GlenOaks began on February 6, 2013. The GlenOaks staff did not adequately understand C.D.'s disability, and therefore did not manage his behaviors appropriately and instead continued to discipline him for manifestations of his disability. Based on C.D.'s behaviors, GlenOaks initiated a psychological testing process, which was conducted by Hammond, a clinical psychologist, and her intern, Kaufman. On February 21, 2013, GlenOaks informed Nardella that C.D. would require a psychiatric clearance before he could return to school, and incorrectly suggested that he might be schizophrenic based on certain manifestations of his disability. C.D. was suspended on February 22 and February 27 for rude comments, provocative behaviors, and verbal aggression. GlenOaks advised Nardella that fellow students felt unsafe around C.D. and that GlenOaks could not meet C.D.'s needs. Accordingly, GlenOaks advised that once it had completed the psychological testing C.D.'s placement at GlenOaks would be terminated. The testing was completed on March 12, at which time C.D.'s IEP was updated to include 20 minutes per week of individual counseling and 200 minutes per week of group counseling and C.D.'s placement at GlenOaks was terminated. The psychological evaluation found, in pertinent part, that C.D.'s autism resulted in an inability to cope with the unexpected and interfered with his ability to cope with environmental stressors. It further noted that C.D. should be enrolled in a program with sufficient resources and spaces to support his needs (implicitly acknowledging that GlenOaks could not do so). Kaufman verbally informed Nardella that he would recommend intensive therapy for C.D. as a result of C.D.'s experience at Leyden and acknowledged that the staff at GlenOaks had been misreading C.D.'s behaviors. Kaufman also agreed to send Nardella his notes and recommendations regarding C.D. During a phone conversation, Hammond also informed Nardella that schools did not provide the type of therapy that C.D. required. Although Nardella received the finished report,

2

it did not contain the statements or recommendations that Kaufman and Hammond had made verbally, and Nardella did not receive Kaufman's notes or recommendations despite requests for both. Nardella alleges that Kaufman and Hammond knowingly altered their findings, either in order to facilitate C.D.'s wrongful termination from GlenOaks or to remove information that would reflect poorly on GlenOaks. Nardella further alleges that GlenOaks and Grigsby, GlenOaks Director, improperly accepted C.D. when it knew it could not meet his needs, failed to adequately train and supervise GlenOaks' staff, disciplined C.D. for behaviors resulting from his disability, and misrepresented C.D.'s behaviors and conduct.

**Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. The allegations must contain sufficient factual material to raise a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Although Rule 8 does not require a plaintiff to plead particularized facts, the complaint must allege factual "allegations that raise a right to relief above the speculative level." *Arnett v. Webster*, 658 F.3d 742, 751–52 (7th Cir. 2011). Put differently, Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), *see also* Fed. R. Civ. P. 8(a). When ruling on a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012).

**Discussion**

As an initial matter, this Court notes that the GlenOaks defendants object to Nardella's revised second amended complaint. When this Court ruled on the GlenOaks defendants' motion to

3

dismiss Nardella's First Amended Complaint, it granted Nardella leave to file an amended complaint to cure the deficiencies identified in the ruling. Nardella's revised second amended complaint, however, went far beyond that grant of leave and added both new defendants (who had been named in the initial pro se complaint but subsequently dismissed from the case) and new claims. The GlenOaks defendants are right that these additions occurred without leave and were therefore improper.

Had Nardella filed a proper motion for leave to amend that set forth the new claims and defendants that she sought to add, however, this Court does not believe that there would have been a basis for denying that motion other than the potential futility of the proposed amendments. Because the futility of the amendments is a question that goes to the merits, and given that this Court has a fully briefed motion to dismiss before it, judicial efficiency favors permitting Nardella's revised second amended complaint and instead ruling on the now-pending motion to dismiss for failure to state a claim. This Court accordingly declines to strike the portions of the revised second amended complaint that exceeded the scope of this Court's prior grant of leave to amend.

Count II of the revised second amended complaint alleges that GlenOaks violated the Rehabilitation Act, 29 U.S.C. § 794. Counts III and IV, which were brought under 42 U.S.C. § 1983, allege that the GlenOaks defendants violated C.D.'s due process and equal protection rights, respectively. GlenOaks contends that these three counts must be dismissed pursuant to *Charlie F. v. Bd. of Educ.*, 98 F.3d 989 (7th Cir. 1996). In *Charlie F.*, the Seventh Circuit held that the Individuals with Disabilities Education Act (IDEA) prohibits individuals from pursuing rights or remedies available under the Constitution or the Rehabilitation Act if those rights or remedies are available under the IDEA, unless IDEA administrative procedures had first been exhausted. *Id.* at 993 (quoting 20 U.S.C. § 1415(f)). In *Kerry M. v. Manhattan Sch. Dist. # 114*, No. 03 C 9349, 2004 WL 2538303, at *8 (N.D. Ill. Sept. 28, 2004), a judge of this Court clarified that the exhaustion

4

requirement encompasses all parties against whom a plaintiff wishes to bring a subsequent civil suit (including education providers and individually named defendants), because exhaustion "ensures that all parties are provided an opportunity to defend themselves at the initial, administrative level before being haled into federal court" and "serves to develop a complete administrative record as the duties and responsibilities of each entity."

Nardella, in response, argues that her claims against GlenOaks and the individual defendants could not be exhausted under the IDEA's administrative procedures because those procedures do not provide a mechanism to interplead individuals or private entities. Nardella, however, offers no authority to support this interpretation of the statute or to call into question the reasoning or holding of *Kerry M*. This Court need not resolve the question of exhaustion, however, because even if this Court were to conclude that Nardella's claims were exempt from the administrative exhaustion requirement those claims would still fail to state a claim on which relief could be granted.

Nardella alleges that GlenOaks violated the Rehabilitation Act, 29 U.S.C. § 794. Section 794 of the Rehabilitation Act provides, in pertinent part, that "No otherwise qualified individual with a disability in the United States ,as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a). Accordingly, in order to state a claim under the rehabilitation act a plaintiff must allege (1) that he is a handicapped individual under the Act, (2) that he is otherwise qualified for the benefit sought; (3) that he was discriminated against solely by reason of the handicap, and (4) that the program or activity in question receives financial assistance. *Grzan v. Charter Hosp. of Northwest Indiana*, 104 F.3d 116, 119 (7th Cir. 1997), *superseded on other grounds by Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 119 S.Ct. 2176, 114 L.Ed.2d 540 (1999).

Nardella alleges that GlenOaks violated section 794 by failing to meet C.D.'s educational needs and by improperly terminating him without determining whether he could be accommodated through additional services.

Here, it is undisputed that C.D. constituted a handicapped individual under the Rehabilitation Act. Nardella, however, has not plausibly alleged that C.D. was otherwise qualified for the benefit sought. An "otherwise qualified" individual is one who is able to meet all of a program's requirements in spite of his handicap. *Se. Comm. Coll. v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). Nardella, however, has consistently alleged that the GlenOaks program was not equipped to accommodate C.D. and that C.D. could not meet the expectations of the program as a result of his handicap. Nardella alleges that she had concerns about GlenOaks from the beginning based on its inability to serve disruptive students and its physical layout. C.D., moreover, was repeatedly suspended for making rude comments to peers and staff, engaging in provocative and unproductive behaviors, and being verbally aggressive to staff and peers. Nardella further alleges that when GlenOaks terminated C.D.'s placement it informed her that it could not meet C.D.'s needs and that his behaviors were interfering with other students and making them feel unsafe. These allegations establish that C.D. was not meeting GlenOaks' requirements in spite of his handicap.

Nardella argues that GlenOaks was required to modify its program to meet C.D.'s needs. This argument, however, is unavailing; it is well established that the Rehabilitation Act does not compel educational institutions "to make substantial modifications in their programs to allow disabled persons to participate." *Id.* at 405. Instead, it only requires that an otherwise qualified handicapped individual not be excluded from participation solely by reason of the handicap, without taking into account the individual's abilities. *Id.*

Nardella has accordingly failed to state a claim against GlenOaks for violation of the Rehabilitation Act.

Count III alleges that the GlenOaks defendants violated C.D.'s substantive and procedural due process rights. As an initial matter, this Court notes that GlenOaks argues that section 1983 cannot be used to pursue claims cognizable under IDEA. As this Court noted in its prior order on the Leyden defendant's first motion to dismiss, however, the current state of the law in this circuit does not support this contention.

In support of her due process claims, Nardella generally alleges that GlenOaks and the individual defendants were aware of C.D.'s needs, that they failed to adequately meet these needs, and that they failed to complete the psychological evaluation of C.D. prior to terminating his placement. She also alleges that GlenOaks and Grigsby failed to adequately train GlenOaks' staff. But Nardella does not specifically allege the impairment of a constitutionally protected interest or the use of inadequate procedural processes. Nardella, in fact, fails to make any specific allegations about what procedural processes were used in reaching the challenged decisions. Accordingly, this Court holds that Nardella has failed to state a Due Process claim. *See Crenshaw v. Baynerd*, 180 F.3d 866, 869 (7th Cir. 1999) (observing that in order to state a procedural due process claim a plaintiff must identify a property interest or state-created liberty interest of which he was allegedly deprived).

Count IV alleges that the GlenOaks defendants violated C.D.'s equal protection rights by treating C.D. differently than students without disabilities and students with disabilities other than autism. In order to plead a claim for violation of the equal protection component of the Fourteenth Amendment under § 1983, the plaintiff must allege that C.D. received different treatment from similarly situated individuals. In order to pursue a "class of one" claim as Nardella is here, a plaintiff must show that he was intentionally treated differently than others similarly situated and that there was no rational basis for the difference in treatment. *Geinosky v. City of Chicago*, 675 F.3d 743, 747

(7th Cir. 2012). In Count IV, however, Nardella makes only a conclusory allegation that "[w]ithout any arguable rational basis or legitimate state purpose, GlenOaks, Grigsby, Hammond, and Kaufman treated C.D., a student with autism, differently than students with other disabilities." Nardella's complaint does not clarify how C.D. was allegedly treated differently than similarly situated students or allege the existence of such similarly situated students with the required specificity. *See Muczynski v. Lieblick*, 769 F. Supp. 2d 1129, 1136 (N.D. Ill. 2011) (Darrah, J.) ("Class-of-one equal-protection claims must be limited to those in which the plaintiff pleads, with requisite specificity, that similarly situated persons were not subject to the specific conduct of which the plaintiff complains."). Nardella has therefore failed to state a claim for violation of C.D.'s equal protection rights.

The GlenOaks defendants next contend that Count V of Nardella's amended complaint must be dismissed because Nardella has failed to establish a claim for intentional infliction of emotional distress. In order to state a claim for intentional infliction of emotional distress, a plaintiff must show that (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended that his conduct should inflict severe emotional distress or knew that there was a high probability that it would do so; and (3) the defendant's conduct in fact caused severe emotional distress. *Cook v. Winfrey*, 141 F.3d 322, 330 (7th Cir. 1998).

> Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities. Liability only attaches in circumstances where the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. The distress inflicted must be so severe that no reasonable person could be expected to endure it.

*Graham v. Commonwealth Edison Co.,* 742 N.E.2d 858, 866, 318 Ill.App.3d 736 (2000) (internal quotations and citations omitted).

With respect to the GlenOaks defendants, Nardella's allegations have changed little since her first amended complaint. She alleges that the GlenOaks defendants improperly accepted C.D. into

8

their program, that they disciplined him for behaviors resulting from his autism, that they exaggerated and misrepresented his behaviors, that they hindered Nardella's efforts to obtain records, and that they terminated his placement without adequate notice. As this Court previously noted, the allegations convincingly reflect facts that would likely have caused C.D. emotional distress. But Nardella has alleged no facts sufficient to support a claim that, as an essential element, requires extreme and outrageous conduct "beyond all possible bounds of decency". *Id.; see also A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1209 (9th Cir. 2016) (holding that allegations that the defendants had failed to research whether interventions were appropriate, had failed to provide necessary accommodations, had touched the student in an effort to restrain her, and had enlisted police assistance to restrain her were insufficient to establish extreme and outrageous conduct). Despite this Court's prior ruling, moreover, Nardella has again failed to allege with specificity that the defendants intended to inflict emotional distress or knew that there was a high probability that their conduct would inflict such distress. Instead, Nardella merely alleges that the defendants "engaged in these acts willfully with full knowledge and intent that the acts would have a high probability of causing severe emotional distress to CD" and that "CD suffered severe emotional distress as a direct result." Such conclusory allegations, however, are wholly insufficient. *Iqbal*, 556 U.S. at 663. Accordingly, Nardella has failed to state a claim for intentional infliction of emotional distress.

GlenOaks next contends that Count VI against it must be dismissed. Count VI alleges that GlenOaks violated the Illinois School Student Records Act (ISSRA). The ISSRA, however, is only applicable to public schools and not to private or non-public schools. 105 ILCS 10/2(b). Nardella argues that this restrictions is irrelevant because GlenOaks accepted public funding and executed a contract agreeing to comply with the ISSRA. Nardella, however, offers no legal authority to support either her assertion that a private school can become subject to ISSRA by accepting public funds or

9

to establish that she has a right to enforce GlenOaks' contractual agreement with Leyden Township to comply with ISSRA. Because Nardella's proposed application of the ISSRA is contrary to its face and is unsupported any pertinent legal authority that has been provided to this Court, this Court concludes that Nardella has failed to state a claim for violation of the ISSRA.

Finally, GlenOaks contends that Count VII must also be dismissed. Count VII alleges that GlenOaks violated the Illinois Mental Health and Developmental Disabilities Confidentiality Act, a law which governs the disclosure of patient records kept by providers of mental health or developmental disabilities services. As is pertinent here, the act provides that certain individuals are entitled, on request, to inspect and copy a patient's records. Among those so entitled are "the parent or guardian of a recipient who is at least 12 but under 18 years, if the recipient is informed and does not object or if the therapist does not find that there are any compelling reasons for denying the access" and "the guardian of a recipient who is 18 years or older."

Here, Nardella alleges that she gained guardianship over C.D. in January 2015 and that C.D. turned 22 in March 2014. Nardella also alleges that for the period from beginning his attendance at GlenOaks until his 22nd birthday C.D. had "delegated his educational rights to Nardella." Nardella alleges that she initially requested C.D.'s medical records subject to the MHDDCA in March 2013 and that she continued to request those records into the pendency of this case. As an initial matter, this Court notes that Nardella has offered no authority establishing that C.D.'s "delegation" of his education rights gave her standing to request his medical records under the statute. It is undisputed, however, that Nardella gained standing to make such a request in January 2015 when she became C.D.'s legal guardian. Because Nardella alleges that she requested documents subject to the MHDDCA from GlenOaks after initiating this action, Nardella has plausibly stated a claim.

GlenOaks, in reply, argues that this issue is moot because the documents in question were subsequently supplied to Nardella. GlenOaks recent compliance with its discovery obligations,

however, has no bearing on whether or not it previously violated the MHDDCA and, therefore, is incapable of rendering Nardella's claim for damages based on past violations of that act moot. *See* 740 ILCS 110/15 ("Any person aggrieved by a violation of this Act may sue for damages, an injunction, or other appropriate relief."). This Court accordingly declines to dismiss Count VII at this stage in the proceedings.

**Conclusion**

For the foregoing reasons, the GlenOaks defendants' motion to dismiss [176] is granted in part and denied in part. Counts II through VI are dismissed with prejudice with respect to the GlenOaks defendants. Count VII may proceed.

SO ORDERED.

_____
Sharon Johnson Coleman
United States District Court Judge

DATED: May 5, 2017